UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ROSARIO GUZZI, Petitioner   )
                               )
v.                            )   CIVIL ACTION NO. 05-10300-RWZ
                               )
MICHAEL THOMPSON, Respondent   )

## PETITIONER'S OPPOSITION TO RESPONDENT'S

## MOTION TO DISMISS AS TIME-BARRED AND UNEXAUSTED

In respondent's Answer, ¶ 8, it is stated that petitioner did not appeal of his convictions where <u>all</u> of the indictments were consolidated. Petitioner asserts that he did, which is evidenced with a copy of the docket entries exhibited herein. See **EXHIBIT A**, Appeals Court Docket No. 1998-P-2229 of entries.[1]

Further, said appeal affirmed the judgements of the lower court on January 28, 2002 and the petitioner did not seek further appellate review (FAR) in the higher court.

Therefore, the respondent's calculations, although inaccurate, is nonetheless correct, as the petitioner did not exaust his claims after direct appeal. The respondent's reliance is upon 28 U.S.C. § 2244(d) in this matter.

In respondent's Answer as well, ¶¶ 12A through 12D, it is stated that the petitioner has failed to state a claim upon which relief can be granted in each case.

---

[1]Dana Alan Curhan, Esquire, of counsel for appellant, which will correct ¶ 15(e), if not clarify this Answer.

- 1 -

Petitioner will respond to the claim that he failed to state a claim upon which relief can be granted in ¶¶ 12A through 12D first in this argument. The issues of the time bar and unexausted claims later on.

The petitioner asserts that he did state claims, that relief can be granted in each case.

In **Clements v. Maloney**, 359 F.Supp.2d 2, 8 (D. Mass. 2005), this Court reasoned that "Ordinarily, determining whether petitioner has 'fairly presented' a federal claim to the highest state court is accomplished by examining the ALOFAR." See **Adelson v. DiPaola**, 131 F.3d 259, 263 (1st Cir. 1997) ("[T]he decisive pleading is the application for further appellate review, and we must determine whether the petitioner fairly presented the federal claim to the SJC within 'the four corners' of that application.") (quoting **Mele v. Fitchburg Dist. Ct.**, 850 F.2d 817, 823 (1st Cir. 1988)).

In **Barresi v. Maloney**, 296 F.3d 48, 52 (1st Cir. 2002), the Court further reasoned that it may be appropriate to consult the pleadings and briefs filed in the lower courts to gain a proper understanding of what issues the ALOFAR proposes to raise. See also Rule 4, § 2254 cases, 1976 notes.

The **Barresi** court went on to explain that as to claims that were not accepted for FAR by the SJC, the principal focus is the statement of the claims in the ALOFAR, illuminated as appropriate by reference to the petitioner's argument of those issues in prior pleadings in the lower courts. **Id.**, 359 F.Supp.2d at 9.

Petitioner, having "fairly presented" his claims in the lower courts, and, finally, to the SJC, **Comm. v. Guzzi**, SJC Docket No. FAR-14523, albeit denied on February 2, 2005, those claims were clearly expressed with sufficiency to determine that relief can be granted. It is also likely that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, "given the manner in which those claims were presented." **Id.**, 359 F.Supp.2d at 52.

In the broader perspective where the Mass. R. Civ. P. are echoed in the federal standard, a plaintiff or petitioner can withstand a motion to dismiss if he has alleged facts that do entitle him to relief even if he has not alleged the correct legal theory in his complaint or petition. See **Harvard Law School Coalition for Civil Rights v. Fellows of Harvard College**, 413 Mass. 66, 71 (1992).

Petitioner asserts that he has met the **Nader** [v. Cintron, 372 Mass. 96 (1977)] standard, which also established a lenient one assessing sufficiency. **Id.**, 372 Mass. at 98. Moreover, it is a "minimal hurdle" overcoming a failure to state a claim due to the "generous and indulgent" criteria available. **Brum v. Dartmouth**, 44 Mass. App. Ct. 318, 321 (1998). Lastly, a "Rule 12(b)(6) is not even a blunt instrument and should seldom be the weapon of first choice. Rule 56 is the deadly one." **Kirkland Constr. Co. v. James**, 39 Mass. App. Ct. 559, 565-66 (1995). The petitioner is cognizant that the respondent wisely followed this sage advice.

- 3 -

PETITIONER'S WRIT OF HABEAS CORPUS TIMELY AND

CLAIMS ARE EXAUSTED PURSUANT TO LAW

At the outset of this opposition when responding to the respondent's Answer, page one, ¶¶ 2 and 3, it is clearly said that the petitioner did not seek FAR after direct appeal, leaving his claims unexausted in the higest state court.

Cognizant of this, the petitioner filed a motion pursuant to Mass. R. Crim. P. 25(b)(2) for a required finding of not guilty and alternatively a new trial, on 08-31-2003. In both dockets relative to this matter, MICR1996-01187 and MICR1997-01058, the entries were made on 09-04-03. **EXHIBIT B,** petitioner's motion, with memorandum of law in support.

In respondent's supplemental answer, S.R.A., Ex. 2, as well as S.R.A., Ex. 4, both appearing on page 2 of RML[2], the reference is made to petitioner's R. 25(b)(2) motion and, respectively, the denial of same by the superior court. The actual exhibits, however, are simply the Commonwealth's premature statements of the case prior to trial and are rife with speciousness, if not irrelevant allegations.

The petitioner will not be distracted from the important aspects of his habeas corpus, but will foreclose his objection to this ill-advised tactic by respondent by stating, without fear of contradiction, that the author of said statement in S.R.A., Ex. 2, Alison M. Takacs, an ADA of Middlesex, was

---

[2]Respondent's Memorandum of Law, by page

"reassigned" by the district attorney at the behest of the
petitioner's counsel. The complaint made was that ADA Takacs
was uncooperative, overly-aggressive or downright surly toward
petitioner and counsel. The author of the successor to this
superior court case was ADA Lee Hettinger, who also scribed
a premature statement, but whose demeanor was subtle.

On 10-17-03, the petitioner filed the reconsideration of
his R. 25(b)(2) denial and when also denied, appealed. Upon
summary denial per R. 1:28 of the Appeals Court, the requisite
application for FAR was timely filed in the SJC. And on 02-15-05,
the petitioner filed a habeas corpus pursuant to 28 U.S.C. §
2254, which is alledged to be time-barred and unexausted by the
respondent pursuant to section 2244(d).

The petitioner raises his defense under the same statute,
specifically § 2244(d)(1), which negates the one-year limit
and allows that period to run from the latest of -

(B) the date on which the impediment to filing an application
created by State action in violation of the Constitution or
laws of the United States is removed, if the applicant was
prevented from filing by such State action; and

(D) the date on which the factual predicate of the claim or
claims presented could have been discovered through the
exercise of due diligence.

The statute, 28 U.S.C. § 2244(d)(1)(B)(D), was amended on
April 24, 1996, Pub. L. 104-132, Title I, §§ 101, 106, 110
Stat. 1217, 1220.

In the first instance, the petitioner filed his R. 25(b)(2) motion, as well as a reconsideration upon the denial of said motion, **EXHIBIT C**, to exaust, finally, all of his claims in the convictions attacked in this habeas proceeding. When the SJC refused further appellate review, he timely filed his petition pursuant to the statute, § 2254.

Secondly, in the petitioner's supplemental pleading ORDERED by this Court (Zobel, D.J.) on 02-23-05, he asserted that "any recharacterization of this action is pursuant to the Mass. R. of Crim. P. 30(a), Unlawful Restraint." The reference here is to his R. 25(b)(2) motion filed in the superior court. See Supplement Pleading, page 1, ¶ 4. Respondent did not challenge such recharacterization in any pleading.

Accordingly, the petitioner has raised a claim that is generally known and available in his first motion for a new trial pursuant to Mass. R. Crim. 30, or his claim is waived, which apply equally to constitutional claims that could have been raised. **Hall v. DiPaola**, 986 F.2d 7, 11 (1st Cir. 1993) (referring to the exercise of Rule 30 as a valid procedural bar to Federal Habeas reviews) (emphasis added).

Mass. R. Crim. P. 30 was amended in 10-01-01 since the highly-controversial AEDPA. It has never been amended to strike the language where a person has the right "at any time, as of right," to appeal even the law of the United States. More apt, legislation has not been added to clarify the plain meaning of R. 30 as it relates to the 1996 imposition of the AEDPA upon state law and its meaning.

- 6 -

The unwary, unsophisticated prisoner-litigant, pro se and usually proceeding in forma pauperis, is at a distinct disadvantage when attempting to comprehend an issue dealing with statutory interpretation and its application to the facts in this matter. More apt, comity may well be out the proverbial window when the federal intervention of AEDPA is said to trump the elder Massachusetts law per Mass. R. Crim. P. 30(a)[3]. The attachments of substantial abridgements, i.e., due process, are not counted under "exceptional circumstances" and the "baby is thrown the window with the bath water." Indeed, this issue is an "exceptional circumstance," if not extraordinary where pro se prisoners are better served with appropriate counsel.

In **Voravongsa v. Wall**, 349 F.3d 1, 7-8 (1st Cir. 2003), it remains unclear whether equitable tolling is available here in the First Circuit. If available, however, it is appropriate "for the most exceptional reasons." **David v. Hall**, 318 F.3d 343, 346 (1st Cir. 2003), cert. denied, __U.S. __, 124 S.Ct. 66 (2003). Is it now time this extraordinary circumstance be heightened to exceptional circumstance status?

The petitioner, at this juncture, reiterates his reliance on 28 U.S.C. § 2244(d)(1)(B)(D).

---

[3]Mass. R. Crim. P. 30(a), Unlawful Restraint, any person who is imprisoned or whose liberty is restrained pursuant to criminal convictions may at any time, as of right, file a written motion requesting the trial judge to release him or her to correct the sentence then being served upon the ground that confinement or

- 7 -

The petitioner, having reasoned that he filed his final state appeal in conformity with basic procedural requirments, asserts that he can and should revive an expired limitation period. Accordingly, § 2244(d)(1)(B) provides for just that extension of time.

Snarled in a conflict, not of the petitioner's making, in which the SJC admitted to as "tension between two established lines of decisions," **Comm. v. Lourenco**, 438 Mass. 1018, 1019 (2003) (other citations omitted), the petitioner was tried and convicted of indictments that lacked essential elements made requisite by state law, M.G.L.A. c. 209A:007 and c. 268:013B. See petitioner's supplemental pleading, II, ¶ 1; Habeas Petition, ¶ 12A.

Said errors as to elements are of a constitutional dimension meriting habeas relief where relief is granted only if it has "substantial and injurious effect or influence in determining the jury's verdict. **Brecht v. Abrahamson**, 507 U.S. 619, 623 (1993). Massachusetts is an "element state," where nothing alters the principle that essential elements not contained in a complaint of indictment is insufficient. **Hamling v. U.S.**, 418 U.S. 87 (1974); **U.S. v. Hess**, 124 U.S. 483, 487 (1888).

The Supreme Court in **Patterson v. N.Y.**, 432 U.S. 197, 210

restraint was imposed in violation of the Constitution or laws of the United States or the Commonwealth of Massachusetts.

- 8 -

stated with certainty that while the legislature "generally" defines criminal conduct, the government is not relieved of its constitutional obligation to (1) charge each element in the indictment, (2) submit each element to the jury and (3) prove each element beyond a reasonable doubt. **Harris v. U.S.**, 536 U.S. 545, 557 (2002); **Jones v. U.S.**, 526 U.S. 227, 240-41 (1999); **Mullaney v. Wilbur**, 421 U.S. 684, 699 (1975).

In the most-recent case law unearthed by the petitioner in regard to required elements, **Richey v. Mitchell**, 395 F.3d 660, 672 (6th Cir. 2005), this appellate court reversed a district court's determination that petitioner's claim was not cognizable in a federal habeas court as it was one touching purely on state law. According to **Fiore v. White**, 531 U.S. 225, 228-29 (2001), the federal constitution's Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." U.S.C.A. Const. Amend. 14.

It has been the Commonwealth's assertion that the indictments are sufficient, briefly echoing the superior court's (Quinlan, J.) findings to his R. 25(b)(2) motion on 10-03-03. And yet, in the appellee's brief, page 8, the Commonwealth agrees with the appellant-petitioner that, indeed, the indictments failed to include two essential elements of c. 209A:007 (emphasis added).

Further, the Commonmwealth relied upon **Comm. v. Bacon**, 374 Mass. 358, 359-60 (1978) to refute that missing elements do not make the indictments defective. Appellee's Brief, page 9. The appellant disposed of **Bacon** in his Reply Brief by demonstrating

- 9 -

this case law to be inapposite, since it deals solely with the issue as to whether an indictment must allege and show scienter. To the contrary, the issue before the court is whether an indictment is sufficient when two requisite elements are not shown nor containing facts and circumstances to show that a violation of the alleged crime did transpire, or whether said indictment is fatally defective. Appellant's Brief, pages 6 and 7; Appellant's Reply Brief, page 2.

The Commonwealth also argued that in the Mass. R. Crim. P. 4(a), it is not necessary that "such description include all the elements which must be proved at trial." Appellant's Brief, page 9.

Contrasting this assertion and words are those words that are written in the Reporter's Notes, ¶ 2, the 2004 edition of the Rules of Court, Rule 4(a), making requisite that the setting forth of "all the elements of the crime charged and if a statute does not contain all those elements, an indictment or complaint drawn in terms of that statute is insufficient."

It is abundantly clear that the Commonwealth drew the complaint or indictment in terms that trace the statute and so state as much in it. Appellant's Brief, page 7; Appellant's Reply Brief, page 3.

It is also obvious to the petitioner that the Commonwealth committed a like omission with M.G.L.A. c. 268:013B where the elements are lacking.

The lack of essential elements, it misapplication to law of facts, the conflict between M.G.L.A. c. 277, § 34, and the

- 10 -

"Catch 22" situation presented to the petitioner, not to mention the structural error, all contributes to discretionary abuse and a substantial risk of a miscarriage of justice. Petitioner has consistantly maintained his innocence throughout every proceeding in both trial and appeal.

The petitioner will refrain from digressing further and now returns to § 2244(d)(1)(B) to assert that the "impediment" complained of, which was created by State action and violative of Amendment 14 to the United States Constitution, contrary to federal law, has **not** been removed, to the best of petitioner's knowledge and belief, and is apt to snare a petitioner in the mistaken belief that the Massachusetts Rules of Criminal Procedure panel delegated by the SJC to resolve the conflict will do just that, but has not (emphasis added).

Therefore, it is conceivable that the petitioner could have patiently waited for the impediment to be removed, but chose not to in this case. The State may have considerable time to make the necessary correction to remove the ambiguity, but by not doing so continues to prejudice prospective petitioners.

In **Lourenco,** the court recognized a conflict between G.L. c. 277, § 34, and the essential elements rule. The SJC chose the latter and the United States Supreme Court has indicated that laws such as the former are violative of the United States Constitution. In the instant case, courts chose the former, an obvious abuse of discretion.

In the **Lourenco** case, **supra,** the SJC reversed for defendant,

- 11 -

a conviction for kidnapping, when the complaint did not show an overt act.

It follows then, to establish a criminal violation under c. 209A:007, based on attempted physical harm as definded in § 1(a) of the law, the Commonwealth must have proof consistent with the elements of attempt as applied to similar attempt offenses.

The petitioner dealt with an overt act element in his memorandum of law supporting his R. 25(b)(2) motion in the lower court. An overt act constituting an attempt requires an undertaking, not merely talk. See **Comm. v. Peaslee**, 177 Mass. 267, 271-74 (1901) (Holmes, C.J.). Petitioner's Rule 25(b)(2) Motion, page 9.

Repeating the essential elements required to sustain a conviction under c. 209A:007, correctly delineated in **Comm. v. Fortier**, 56 Mass. App. Ct. 116 (2002), the Commonwealth must prove that (1) there was a valid abuse prevention order in effect on the date of the alleged violation, that (2) the defendant knew of the order, that (3) the defendant had specific intent to cause physical harm to the victim, that (4) the defendant undertook an overt act towards the commission of the physical harm and (5) the overt act was some undertaking that could reasonably be expected to cause physical harm. See also **Comm. v. Welch**, 58 Mass. App. Ct. 408 (2003).

In the first and second element, no mention is made to the indictments as such. On these alone, the indictments should have been dismissed and a not guilty finding entered for the defendant.

In the third, fourth and fifth elements, there are no facts and circumstances alleged in the indictments to reflect these of the alleged crime under c. 209A:007. Said elements must be explicitly stated in the indictments presented to the grand jury and proven at trial.

The Commonwealth, as well as the motions judge (Quinlan, J.) relied upon **Comm. v. Donoghue**, 23 Mass. App. Ct. 103, 110 (1986) to negate the petitioner's argument. Their brief and generally stated counterpoint seriously lacks specificity. It is also a misapplication of the law to the facts, constituting an abuse of discretion for the judge. Petitioner's Motion for Reconsideration, page 3.

In **Fortier,** the court reversed a violation of the Abuse Prevention Act when the defendant was convicted under c. 209A, section 7, as a result of insufficient evidence supporting a conviction, as the trial judge applied a legally incorrect standard for "attempting to cause physical harm." **Id.** 56 Mass. App. Ct. at 117-18.

Further, the law, c. 209A, section 1, as amended by St. 1990, c. 403, § 2, defines "abuse" as (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; [or] (c) causing another to engage involuntarily in sexual relations by force, threat or duress. **Ibid.** Nowhere, not in any document or is it stated or alleged that the defendant in the instant case ever abused the alleged victim in this fashion. Point of fact, the person and

- 13 -

the complainant, both the same individual, sought out the petitioner after his trial. Regular visits commenced at that time and an offer of recantation was made to him. It was rationilized that the Commonwealth would then threaten to prosecute for alleged perjury and both the petitioner and the "victim" opted to rely upon post-conviction remedies.

Returning to respondent's assertion that the petitioner failed to exaust all available state remedies even when assuming the petition was timely filed, RML, II, page 5, one can simply look to the state's higest court, the SJC, to see that an "opportunity" did exist for a correction, but they chose not to hear the petitioner's claim as to the "impediment" complained of in **Lourenco.**

While the respondent hinges on **Picard v. Connor**, 404 U.S. 270, 275 (1971) (quoting **Darr v. Burford**, 339 U.S. 200, 204 (1950), to state how "unseemly" it would be to upset a state court conviction without an "opportunity" to correct a constitutional violation, it is, nonetheless, seemly to do so in the name of justice. Again, the SJU, while reversing for the defendant in **Lourenco**, it chose not to avail itself of an opportunity in the petitioner's case.

In **Glass v. Bissonnette**, 349 F.Supp.2d 46, 48 (D. Mass. 2003), the Court reinforced the determination in **Wells v. Marshall**, 885 F.Supp. 314, 316 (D. Mass. 1995), that the exaustion requirement is negated by an absence of a corrective process in the state court or that circumstances are such that

- 14 -

the state process is ineffective to protect the prisoner's
rights. 28 U.S.C. § 2254(b)(1)(B). Little has changed since
**Glass**, only the "numbers."

"For example, it may be futile for the petitioner to raise
his claim in state court 'if state remedies are no longer
available to the petitioner because of a procedural default.'"
**Id.**, 349 F.Supp. at 317, citing **Castille v. Peoples**, 489 U.S.
346, 351-52 (1989).

The "impediment" is unresolved, while the finding in **Brown
v. Allen**, 344 U.S. 443, 448-49 n.3 (1953), reconciled section
2254(c) with petitioner's claim under section 2254(b),
providing that federal habeas review will lie where state
corrective processes are "ineffective to protect the rights
of the prisoner." **Castille**, 489 U.S. at 350.

The petitioner, his claims properly stated upon which relief
can be granted, as well as exausted, need not avail himself of
the respondent's offer to voluntarily delete those alleged to
be unexausted. Further, the petitioner has presented good
cause as to an "impediment" existing in the state's courts
that begs correction and is constitutionally violative. **Rhines
v. Weber**, 125 S.Ct. 1528, 1534 (Decided March 30, 2005).

In a Nineth Circuit comparison, **Baldwin v. Reese**, 124 S.Ct.
1347, 1348 (Decided March 2, 2004), the Court of Appeals
reversed for habeas prisoner when finding that he "fairly
presented" his claim to state courts because the State Supreme
Court had the opportunity to read lower court decisions, and,

- 15 -

had they done so, would and should have relaized that his claim
rested upon federal law. The Supreme Court, however, held that
if a court must read beyond a petition, brief or similar paper
to alert them to the presence of such a claim, "ordinarily" it
is not fairly presented.

Justice Stevens dissented, citing R. 15.2 permitting
respondents to defend a judgement not raised in the brief in
opposition when the issue "predicates to an intelligent
resolution of the question presented." **Ohio v. Robinette**, 519
U.S. 33, 38 (1996) (internal quotations omitted).

Lastly, respondent asserts, correctly, that the petitioner
is "implying a due process violation," as to his Ground Two.
Structural error infects the entire process of criminal
proceedings and one in which the federal Due Process Clause
(U.S.C.A. Const. Amend. 14) prohibits a state to convict a
person of a crime without proving the elements of that crime
beyond a reasonable doubt. **Fiore v. White**, 531 U.S. 225,
228-29 (2001). The petitioner's argument in this regard does
appear in his ALOFAR, page 10, as well as every other pleading
in this matter.

In **O'Sullivan v. Boerckel**, 526 U.S. 838, 844 (1999), the
Court did qualify the exaustion of remedies available in state
courts by stating that " ... [w]e have never interpretated the
exaustion requirement in such restrictive fashion that would
invoke **any possible** avenue of state court review" (emphasis in

the original). See **Wilwording v. Swenson**, 404 U.S. 249, 250 (1971) ("The exaustion of-state-remedies rule should not be stretched to the absurdity of requiring the exaustion of ... separate remedies when at the outset a petitioner cannot intellingently select the proper way, and in conclusion he may find that none of the [alternatives] is appropriate or effective") (quoting **Mario v. Ragen**, 332 U.S. 561, 568 in 1947, Rutledge, J.); **Brown v. Allen**, 344 U.S. 443, 447 (1953) (held that a prisoner does not have to twice ask for relief).

In **Picard**, 404 U.S. at 281, a dissenting Justice Douglas stated that the rule of exaustion in the case carried too far. "When we go to that extreme, we make a trap of the exaustion doctrine which promises to exaust the litigant and his resources, not the remedies."

No truer words have been spoken in the exaustion requirement's assessment in state courts. The oft-absurd requirement's undue restrictiveness through a myriad of remedies called for has exausted the petitioner in this matter. No wonder that his pleadings are found lacking by this Court. Lest we forget, the petitioner is a pro se prisoner not au courant with law. Sort of like David and Goliath.

Respectfully submitted,

Rosario Guzzi, pro se

MCI Shirley Medium

Box 1218

Shirley, MA 01464

- 17 -

# Exhibit A

06/15/05                    COMMONWEALTH OF MASSACHUSETTS                    Page 2
                                  APPEALS COURT

                                  1998-P-2229

                     COMMONWEALTH vs. ROSARIO F. GUZZI, JR.

Middlesex Superior Court Dept.
(Lower Court: Criminal)
Clerk for Criminal Business
40 Thorndike Street
East Cambridge MA 02141
Phone: 617-494-4015
Active 09/28/00

                          * * *  D O C K E T  * * *
-----------------------------------------------------------------------------
PAPER DATE    ENTRY
------ -------- -------------------------------------------------------------

        12/01/98 Transcripts received: vols: 4; sets: 2; Cab: K; Shelf: 4.

        09/28/00 Briefs located in Room 952: Cab G; Shelf 2.

   1.0 12/01/98 Entered.

        03/05/99 Notice preceding dismissal: Rule 17A.

        04/07/99 ORDER: DISMISSAL under Rule 17A.

   2.0 04/23/99 Notice of dismissal to Trial Court: 17A. (Imaged)

   3.0 09/21/00 Motion to reinstate the appeal filed by Rosario F. Guzzi, Jr.
                 w/attach.

        09/28/00 RE#3: Allowed. The appeal is reinstated and the appellant's
                 brief is accepted for filing this date. (Greenberg, J.)
                 *Notice/Attest/Image.

   4.0 09/28/00 SERVICE of brief & appendix for Defendant/Appellant Rosario F.
                 Guzzi, Jr.

   5.0 10/12/00 MOTION to extend brief due date of Commonwealth.

        10/12/00 RE#5: Extension to 01/12/2001 granted for filing of brief of
                 Commonwealth, Plaintiff/Appellee. No further enlargements.
                 *Notice.

   6.0 01/12/01 SERVICE of brief & appendix for Plaintiff/Appellee
                 Commonwealth.

        03/27/01 Copy of docket sent to Rosario F. Guzzi, Jr..

   7.0 06/07/01 Letter from Rosario F. Guzzi, Jr. re: request a copy of docket
                 entries.

        06/07/01 RE#7: Copy of docket sent to Rosario F. Guzzi, Jr.
                 *Notice/Rosario F. Guzzi, Jr.

06/15/05                    COMMONWEALTH OF MASSACHUSETTS                    Page 3
                                   APPEALS COURT

                                    1998-P-2229

                      COMMONWEALTH vs. ROSARIO F. GUZZI, JR.

                            * * *   D O C K E T   * * *
-------------------------------------------------------------------------------
PAPER DATE     ENTRY
------ -------- ----------------------------------------------------------------
  8.0 11/07/01 Notice of 12/03/2001, 9:30 A.M. argument sent.

      12/03/01 Oral argument held. (P DF GN).

  9.0 01/28/02 Decision: Rule 1:28 (P DF GN). Notice. (See image on file.)
               Judgments affirmed.

      02/25/02 RESCRIPT to Trial Court.

 10.0 08/12/03 Letter from Rosario F. Guzzi, Jr. re: status of case, how to
               proceed FAR, and request for a copy of docket.

      08/12/03 RE#10: Enclosed is a copy of the docket sheet in this matter.
               If you seek further appellate review, you must apply to the
               Supreme Judicial Court for permission to file a late request.
               *Notice/Rosario F. Guzzi, Jr.

 11.0 06/15/05 Letter from Rosario Guizzi, Jr. requesting copy of docket
               sheet.

      06/15/05 RE#11 Docket sheet sent to Rosario Guzzi, Jr..

# Exhibit B

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                         SUPERIOR COURT DEPARTMENT

                                      NOS. 96-01187; 97-01058

COMMONWEALTH                    )
                                )
        v.                      )
                                )
ROSARIO F. GUZZI                )

### MOTION FOR REQUIRED FINDING OF NOT GUILTY

Now comes the defendant in the above captioned matters and respectfully moves this court, pursuant to M.R.C.P. Rule 25(b)(2), for a required finding of not guilty or in the alternative a new trial.

As reasons therefore, the indictments on their face are fatally defective as follows:

a)    no fact and circumstances are shown that a crime or crimes has been committed;

b)    the prosecutor lacked probable cause to seek the indictments;

c)    the trail court lacked jurisdiction to convict the defendant.

In support of his argument the defendant attaches his memorandum of law hereto.

WHEREFORE, the defendant prays that this court will ALLOW his request for a required finding of not guilty or in the alternative GRANT him a new trial.

                              Respectfully submitted,

August 31, 2003

                              Rosario F. Guzzi, pro se
                              W-63283 MCI Shirley Medium
                              Box 1218
                              Shirley, MA 01464

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPARTMENT

                                        NOS. 96-01187; 97-01058

COMMONWEALTH v. GUZZI

MEMORANDUM IN SUPPORT OF A RULE 25(b)(2) MOTION

The defendant, at the outset, asserts his actual innocence
in these matters in which he was unlawfully indicted and
unjustly convicted. Innocence is defined as the absence of
guilt; especially freedom from guilt for a particular offense.
Cf. Guilt. Black's Law Dictionary, Seventh Edition, page 792.
Like cold, ullage and darkness, innocence cannot be directly
measured. The defendant will attempt to defeat proof of guilt
by demonstrating that the elements used to measure the guilt
were non-existant of faulty.

"[T]he great principal asserted by the Declaration of
Rights is that no man shall be put to answer a criminal
charge until the crimination evidence has been laid before a
grand jury, and that they have found probable cause, at least,
to believe the facts true on which the criminality depends."
**Comm. v. Holley**, 3 Gray 458, 459 (1855).

The defendant asserts that the indictments on their face
are fatally defective in that no facts and circumstances are
shown that a crime has been committed.

In **Comm. v. Hawkins**, 21 Mass. App. Ct. 766, 490 N.E.2d
489, 490 (1986), the court determined jurisdiction in these
cases when it said that "Certainly the general rule is that an
appellate court will not consider an issue raised for the
first time on appeal. **Comm. v. Marchionda**, 385 Mass. 238, 242,
431 N.E.2d 177 (1982), and cases cited. An exception is where
the language of the indictment does not set out a crime. **Comm.**

- 1 -

**v. Boone**; 394 Mass. 851, 853 n. 1, 477 N.E.2d 1026 (1985). Such a defect is jurisdictional in nature; and, in accordance with the usual rule, a jurisdictional problem may be raised at any stage of the proceedings, and should be raised by any court that notices the problem, whether or not it has been raised by other parties. **Comm. v. Andler**, 247 Mass. 580, 582, 142 N.E. 921 (1924). **Comm. v. Burns**, 8 Mass. App. Ct. 194, 196, 392 N.E.2d 865 (1979).

In **Comm. v. Walker**, 426 Mass. 301, 305-306, 687 N.E.2nd 1246 (1997), the court said that "...a defendant is entitled to notice of each alleged fact or element of the offense charged," relying upon **Burns** at 196. "Where an indictment has failed to charge a crime because it lacks an essential ingredient of the crime sought to be charged the court has no jurisdiction to convict the defendant." **Ibid.**

In **Hamling v. U.S.**, 418 U.S. 87, 117, 41 L.Ed.2d 590 (1974), the court stated that prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an aquittal or conviction in bar of future prosecutions for the same offense. Further, it is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offenses intended to be punished. **U.S. v. Carll**, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). See **U.S. v. Hess**, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888); **U.S. v. Penagaricano-Soler**, 911 F.2d 833, 839 (1st. cir. 1990); **U.S. v. Mojica-Baez**, 229 F.3d 292, 309 (1st. cir. 2000).

- 2 -

The defendant was not tried in a federal court, but an interpretation of the preceeding case law would also be consistant with state requirements. **Harris v. U.S.**, 122 S.Ct. 2406, 2410 (2002), an interim edition.

In the case at bar, the prosecutor failed to charge each element in the indictment implicating constitutional obligations and was denied the right to seek an indictment in the first place, as there existed no probable cause.

"If an indictment failes to allege any fact necessary to constitute an offense, even statutory, it is defective." **Comm. v. Bracy**, 313 Mass. 121, 124, 46 N.E.2d 580, 582, (1943).

It has long held that the Due Process Clause of the 14th Amendment to the U.S. Constitution does not require indictments nor grand jury proceedings. Once a state so chooses, however, then the provisions of Due Process apply and failure to provide it is a violation. U.S.C.A. Const. Amend. 14.

A complaint must inform a defendant of the crime with which he is being charged and information sufficient to enable him to prepare a defense. **Comm. v. Gill**, 363 N.E.2d 267, 269 (Mass. App. Ct. 1977).

The defendant asserts that he is made to answer offenses not fully, plainly, substantially and formally described to him. Part 1, Art. 12, Massachusetts Declaration of Rights.

Mirroring **Harris**, at 2414, the justices cautioned that defining criminal conduct is a task best left to legislatures, **Patterson v. New York**, 432 U.S. 197, 210, 97 S.Ct. 2319,

- 3 -

53 L.Ed.2d 281 (1977), Congress may not manipulate the definition of a crime in a way that relieves the Government of its constitutional obligations to charge each element in the indictment, submit each element to the jury and prove each element beyond a reasonable doubt. **Jones v. U.S.**, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); **Mullaney v. Wilbur**, 421 U.S. 684, 699, 98 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

Here again, the Due Process Clause is applicable, the Commonwealth having long-adopted indictments and grand jury processes. U.S.C.A. Const. Amend. 14.

In **Lataille v. District Court of Eastern Hampden**, 320 N.E.2d 877, 882 (1977) (relying on **Jones v. Robbins**, 8 Gray 329, 342-350 (1857), the court reiterated the fact that the grand jury have the dual function of determining whether there is probable cause to believe a crime has been committed and of protecting citizens against unfounded criminal prosecutions. **Comm. v. Goldstein**, 54 Mass. App. Ct. 863, 867, 768 N.E.2d 595 (2002); **Comm. v. McCarthy**, 385 Mass. 160, 163, 430 N.E.2d 1195 (1982) (quoting from **Lataille**).

The **McCarthy** court echoed the pronouncements of the justices in both **Holley**, at 458, and **Robbins**, at 344, that all citizens have the right to be secure from public accusations of crime, as well from the trouble, expense and enxiety of a public trial, before probable cause is duly established by presentment and indictment of a grand jury, in high offense, and is justly regarded as one of the main securities to the innocent against hasty, malicious and oppresive public prosecutions ... " **Id.** at 1197 n. 6, 430 N.E.2d 1195.

- 4 -

The defendant asserts that the grand jury did not hear "reasonably trustworthy information" sufficient to warrant a prudent person in believing that the defendant had committed, or was committing an offense relative to the instant case, **Comm. v. Stevens**, 362 Mass. 24, 26, 283 N.E.2d 673 (1972) (quoting **Beck v. Ohio**, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 in 1964), rendering the indictment against him "fatally defective," **Connor v. Comm.**, 363 Mass. 572, 574, 296 N.E.2d 172 (1973). **Id.** at 1197, 430 N.E.2d 1195.

Thus, it was axiomatic that the high court agreed with defendant McCarthy, that "all subsequent proceedings taken in reliance upon the indictment were void." **Ibid.**

A grand jury may consider incompetent and illicit evidence, as well as hearsay, but cannot itself violate a constitutional privilege. **U.S. v. Calandra**, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

It is also true, that, if an indictment fails to state a crime, no court has jurisdiction to entertain it, **Andler** at 581-582, 142 N.E. 921, while the jurisdictional question may be rasied at any time. **Ibid.**

The court has a duty to consider such a point on its own motion. **Ibid.**

It is not enough to allege that a defendant has formed the intent to commit a crime or that he has merely made preparations for the commission of a crime. **Comm. v. Peaslee**, 177 Mass. 267, 271-274, 59 N.E. 55 (1901) (Holmes, C.J.).

The defendant reasserts his innocence and avers that he made no attempts nor prepared to do so, be it to violate a restraining order or intimidate a witness.

- 5 -

In **Peaslee**, at 272, Justice Holmes said that an overt act must be more than preparation and must come very near to accomplishment of result. **Comm. v. Kennedy**, 170 Mass. 18, 20-22, 48 N.E. 770 (1897) (quoting **Comm. v. Purrier**, 54 Mass. App. Ct. 397, 766 N.E.2d 72, 75 n. 8 in 2002); **Comm. v. Gosselin**, 365 Mass. 116, 121, 309 N.E.2d 884 (1974); **Comm. v. Ortiz**, 408 Mass. 472, 560 N.E.2d 698 (1990); **Comm. v. Fortier**, 56 Mass. App. Ct. 116, 775 N.E.2d 785 (2002).

The defendant refutes any attempt to attach an inchoate offense to these matters, which are allegedly used to bolster sufficiency for an indictment or indictments.

In Black's Law Dictionary, Seventh Edition, page 1108, offenses are clearly defined as violations of law; a crime, often a minor one.

In this same edition, page 765, inchoate is there defined as partially done or imperfectly formed; just begun. See Andrew Ashworth, Principals of Criminal Law 395 (1991).

Concluding as a law person would, an inchoate offense is an incomplete crime. Obviously, insufficient to warrant any lay person in believing that the defendant had committed a crime and insufficient to sustain an indictment.

INDICTMENTS

July 7, 1996, an indictment was returned in Middlesex for the caption Violation of Restraining Order C. 209A, §7, with text stating that on or about [four different dates in 1996] in Newton or Waltham, did fail to comply with a court order to refrain from contacting or abusing [name withheld] issued under the provisions of Chapter 209A section 3 or 4. See Nos. 96-1187-003, 96-1187-004, 96-1187-005, 96-1187-006.

- 6 -

May 15, 1997, another like indictment was returned in Middlesex, per two different dates in 1997, in Newton and Waltham. See Nos. 97-1058-001, 97-1058-002.

July 7, 1996, an indictment was returned in Middlesex for the caption Intimidation of Witness Chapter 268, §13B, with text stating that on or about [two different dates] in Newton, did directly or indirectly, willfully endeavor by means of intimidation to obstruct, delay or otherwise interefere with [name withheld] a person who was providing information to a criminal investigator relating to a violation of a criminal statute of the Commonwealth. See 96-1187-001, 96-1187-002.

"[A] bill of particulars is appropriate where it does not add necessary fact or element, but merely elaborates 'upon the overt act already included in the indictment' (cites omitted)." U.S. v. Daniels, 159 F.Supp.2d 1285, 1298 (2001).

In the case at bar, the indictments do neither. A crime is "made up of acts and intent and these must be set forth in the indictment with reasonable particularity of time, place and circumstances." Comm. v. Montanino, 409 Mass. 500, 567 N.E.2d 1212 (1991); U.S. v. Cruickshank, 92 U.S. 542 (1875).

"[A] bill of particulars cannot save an otherwise invalid indictment, Russel v. U.S., 369 U.S. 749, 770, 82 S.Ct. 1038 (1962), but it can serve to give adequate notice of trial preparation in these circumstances." Id. at 1297, 159 F.Supp. 2d 1285.

A bill of particulars is to the discretion of the court where it was not requested by defense counsel nor considered by the prosecution.

- 7 -

The three (3) elements of a restraining order violation
are (1) a valid order existed; (2) the defendant knew of the
order; and (3) that the defendant violated the order, **Comm.
v. Rauseo**, 50 Mass. App. Ct. 699, 705, 740 N.E.2d 1053 (2001);
**Comm. v. Silva**, 431 Mass. 403, 727 N.E.2d 1150 (2000), all of
which must be explicitly stated in the indictment presented
to the grand jury and proven in the trial court.

Six (6) indictments require as proof where the defendant
knew of a valid order and either met with or contacted the
victim. See Nos. 96-1187-003 through 006; 97-1058-001, 002.

Proof in the initial stage of a complaint not needed to
allege a c. 209A, § 7 violation, but both facts and the
circumstances, overt acts, are requisite to sustain an
indictment. Lacking the essential ingredients of the crime
sought to be charged, they fail to charge a crime. Thus, the
indictments were fraudulently presented to the grand jury
for the sole purpose of obtaining them. This same fraudulent
practice was again perpertrated throught the entire proceedings.

The defendant was arrested during the initial hearing where
an abuse prevention order issued, not able to defend himself
as a result of the order. He was then restrained from presenting
any evidence of a contrary nature. See No. 96-00456.

The presiding justice, now retired, expressed his disbelief
that a substantial number of police officers would intervene at
the outset of a civil matter, but accepted their allegation
that the defendant was a "dangerous man." Prior to this day,
the defendant had no criminal history.

No physical evidence was ever offered in any of the criminal
proceedings during the pendancy of this malicious prosecution.

- 8 -

Two (2) of the indictments allege that the defendant intimidated a witness according to c. 268, § 13B. Again, the test applied for review of indictments is whether it is fully and plainly, substantially and formally, a description for the crime in which the defendant is to answer. See Nos. 96-1187-001, 96-1187-002. **Comm. v. Donoghue**, 23 Mass. App. Ct. 103, 110, 499 N.E.2d 832 (1986); **Hamling**, at 117, 418 U.S. 87. If, as here, one cannot tell what facts the grand jury relied upon, the indictment cannot stand.

"[U]ndoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such statements of the facts and circumstances as will inform the accused of the specific offense, coming under the general description." **Hamling**, supra.

The allegation, "directly or indirectly, willfully endeavor by means of intimidation to obstruct, delay or otherwise interfere with ..." is impermissibly vague, as well as misleading.

The importance of an intentional act, i.e., an overt act, not appearing in an indictment will render it duly defective, since the defendant was convicted on evidence of crimes not included in or different from the indictments. **Comm. v. Lamont**, 438 Mass. 842, 845, 784 N.E.2d 1119 (2003).

In conclusion, the indictments are fatally defective on on their face. No facts or circumstances are shown to demonstrate that a crime or crimes have been committed.

They are devoid of any overt acts or of any preparation, lacking the essential ingredient of the crime sought to be charged. The prosecutor was without probable cause to bring an indictment. The court lacked the jurisdiction to entertain an indictment.

In this aggressive prosecution of the defendant, both state law, state and federal constitutional privileges, were blatantly violated. As a matter of law, the indictments must be dismissed with prejudice.

Respectfully submitted,

Rosario F. Guzzi, pro se
W-63283 MCI Shirley Medium
Box 1218
Shirley, MA 01464

August 31, 2003

- 10 -

# Exhibit C

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPARTMENT

                                        NOS. 96-01187; 97-01058

COMMONWEALTH

v.

ROSARIO F. GUZZI

### MOTION FOR RECONSIDERATION

This motion is for reconsideration of an ORDER of denial of petitioner's motion for a ruling pursuant to Mass. R. Civ. P. 25(b)(6), issued on October 3, 2003, by Justice Quinlan.

The judge abused her discretion by a misapplication of the law to the facts, and the court further failed to provide due process in that substantial issues were raised by the petitioner and no hearing was held. This motion should be ALLOWED as a direct result of these factors.

### MISAPPLICATION OF FACTS TO LAW

The law is indisputable. In order for an indictment to be valid it must contain facts to show that a violation of each and every element of the law allegedly violated.

In Massachusetts, the law is the strict elements-based approach. See **Comm. v. Jones**, 59 Mass. App. Ct. 157, 794 N.E.2d 1220 (2003).

The elements necessary to sustain a conviction pursuant to §7 of c. 209A are correctly defined in **Comm. v. Fortier**, 56 Mass. App. Ct. 116, 775 N.E.2d 785, 787 (2002), based on attempted physical harm as defined in c. 209A, §1(a) and where the Commonwealth must prove that (1) there was a valid c. 209A abuse prevention order in effect on the date of the alleged violation; (2) the defendant knew of the order; (3) the defendant had the specific intent to cause physical harm to the victim; (4) the defendant undertook an overt act towards

- 1 -

the commission of the physical harm; and (5) the overt act was some undertaking that could reasonably be expected to cause physical harm. See also **Comm. v. Welch**, 58 Mass. App. Ct. 408, 790 N.E.2d 718 (2003).

In the first and second element, no mention is made in the indictments as such. On these alone, the indictments must be dismissed and a not guilty finding entered for the defendant.

In the third, fourth and fifth element, there are no facts and circumstances alleged in the indictments to to reflect these elements of the alleged crime of a c. 209A violation. And it must be explicitly stated in the indictment presented to the grand jury and proven in the trial court.

If an indictment lacks any fact or element of the alleged crime, it is defective and deprives the trial court of jurisdiction. See e.g., **Comm. v. Walker**, 426 Mass. 301, 303, 687 N.E.2d 1246 (1997), where the court wrote that "Walker draws our attention to an important compelling policy, that a defendant is entitled to notice of each alleged fact or element of the offense charged." See e.g., **Comm. v. Burns**, 8 Mass. App. Ct. 194, 196, 392 N.E.2d 865 (1979), where this court wrote that "Where an indictment has failed to charge a crime because it lacks an essential ingredient of the crime sought to be charged, the court has no jurisdiction to convict the defendant."

The United States Supreme Court recently echoed the same theme in **Harris v. U.S.**, 122 S.Ct. 2406, 2414 (2002) (interim edition), by penning that "Though defining criminal conduct is a task generally 'left to the legislative branch,' **Patterson v. N.Y.**, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), Congress may not manipulate the definition of a crime in a way that relieves the government of its constitutional obligation to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt."

- 2 -

Justice Quinland, relying on **Comm. v. Donoghue**, 23 Mass.
App. Ct. 103, 110, 499 N.E.2d 832 (1986), stating that "An
indictment is sufficient if it 'fully and plainly,
substantially and formally, describes the crime for which the
defendant is held to answer.'" The court does not demonstrate
how this applies to the indictments in question nor can it.
The indictments do not "fully" nor "substantially" describe a
violation of c. 209A, as they lack at least two of the essential
elements of the alleged crime. This is also a misapplication
of the law to the facts, which constitute an abuse of discretion.

In **Fortier**, the court reversed a violation of the Abuse
Prevention Act where the defendant was convicted under c. 209A,
§7, due to insufficient evidence to support a conviction, as
the trial judge applied a legally incorrect standard for
"attempting to cause the physical harm." Id. at 117-18.

The law, c. 209A, §1, as amended by St. 1990, c. 403, §2,
defines "abuse" as (a) attempting to cause or causing physical
harm; (b) placing another in fear of imminent serious physical
harm; [or] (c) causing another to engage involuntarily in sexual
relations by force, threat or duress. Id. at 117, n. 1.

In **Comm. v. Lourenco**, 438 Mass. 1018, 1019, 783 N.E.2d 825
(2003), the court recognized a conflict between G.L. c. 277,
§34, and the essential elements rule. The Supreme Judicial
Court chose the latter and the United States Supreme Court has
indicated that laws such as those former are violative of the
United States constitution.

In this matter, the court chose the former, which is an
abuse of discretion.

In **Lourenco**, supra, the court reversed the conviction for
kidnapping, as the complaint did not show an overt act.

It follows therefore, that to establish a criminal violation
under c. 209A, §7, based on attempted physical harm as defined
in §1(a), the Commonwealth must have proof consistent with the
elements of attempt as applied in similar criminal attempt
offenses.

- 3 -

I would point out that in **Comm. v. Gordon**, 407 Mass. 340, 345, 553 N.E.2d 915 (1990), the court made a distinction between violations of c. 209A, which can be charged pursuant to §7, and those violations which can only be pursued via a criminal contempt complaint for causing or attempting to cause actual physical harm and failure to evacuate premises.

The high court in **Comm. v. Delaney**, 425 Mass. 587, 596, 682 N.E.2d 611 (1997, reiterated and defined the elements necessary to prove a criminal contempt of a restraining order beyond a reasonable doubt, by its final element stating that "the defendant clearly and intentionally disobeyed that order in circumstances in which he was able to obey it." See also **Comm. v. Brogan**, 415 Mass. 169, 171, 612 N.E.2d 656 (1993), qouting **Furtado v. Furtado**, 380 Mass. 137, 145, 402 N.E.2d 1024 (1980).

A long-held standard employed by the court is that "If an indictment fails to allege any fact necessary to constitute an offense, even statutory, it is defective." **Comm. v. Bracy**, 313 Mass. 121, 124, 46 N.E.2d 580, 582 (1943).

Another gem of consistency is that "A complaint must inform a defendant of the crime with which he is being charged and information sufficient to enable him to prepare a defense." **Comm. v. Gill**, 363 N.E.2d 267, 269 (Mass. App. Ct. 1977).

The petitioner reasserts that he is made to answer an offense or offenses not fully, plainly, substantially and formally described to him. Massachusetts Declaration of RIghts, Part 1, Article 12.

The Due Process Clause is applicable here as well, as the Commonwealth has long-adopted indictments and grand jury processes. U.S.C.A. Const. Amend. 14.

- 4 -

None of the indictments alleging a violation of c. 209A have any facts and circumstances to show a violation of the alleged restraining order actionable pursuant to §7. It is not mentioned either that there was a valid restraining order nor that the defendant knew of the order. Thus, there are four (4) essential elements missing. The indictments therefore are fatally defective and the court lacked jurisdiction to convict the defendant. **Walker**, supra.

The petitioner dealt with an overt act element in his memorandum support his initial motion for a ruling pursuant to R. 25(b)(6). An overt act constituting an attempt requires an undertaking, not merely talk. See e.g., **Comm. v. Dixon**, 34 Mass. App. Ct. 653, 657, 614 N.E.2d 1027 (1993); **Comm. v. Peaslee**, 177 Mass. 267, 271-74, 59 N.E. 55 (1901) (Holmes, C.J.).

### STRUCTURAL ERROR

The motion judge, without so stating, applied the harmless erro⊁ rule. The lack of jurisdiction to convict because of defective indictments however, is a "structural error," which defies harmless error application.

No hearing was held in the case at bar notwithstanding the plaintiff's raising of serious issues and a showing of an issue (due process) of constitutional importance. See e.g., **Comm. v. Brookins**, 33 Mass. App. Ct. 626, 635, 603 N.E.2d 916 (1992); **Comm. v. Licata**, 412 Mass. 654, 660-61, 591 N.E.2d 672 (1992). See Mass. R. Crim. P. 30(c)(3), 378 Mass. 901 (1979). As such, the motion judge abused her discretion in failing to have a hearing.

In **Lonchar v. Thomas**, 517 U.S. 314, 342, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), the court determined that " ... [i]t is a paradigmatic abuse of discretion for a court to base its judgement on a erroneous view of the law." **Schlup v. Delo**, 513 U.S. 298, 333, 115 S.Ct. 851, 870, 130 L.Ed.2d 808 (1995) (O'Connor, J., concurring) (citing **Cooter & Gell v. Hartmarx**, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-461, 110 L.Ed.2d 359 (1990).

- 5 -

In **Scarpa v. DuBois**, 38 F.3d 1, 14 (1st Cir. 1994), the
court said that " ... other more fundamental errors,
denominated 'structural errors,' jar the framework in which
the trial proceeds and, accordingly, are said to 'defy analysis
by harmless-error standards,' **Brecht**, ___ U.S. at ___, 113
S.Ct. at 1717 (quoting **Fulminante**, 499 U.S. at 309, 111 S.Ct.
at 1264), and, thus necessitate 'automatic reversal of [a]
conviction because they infect the entire trial process,' **Id.**

CONCLUSION

The indictments are fatally defective on their face where
no overt acts or of any preparation are shown, lacking the
essential elements for the crime sought to be charged. The
prosecutor was without probable cause to bring an indictment.
The court lacked the jurisdiction to entertain it. As a
matter of law, the indictments must be dismissed with prejudice.

Signed under the pains and penalities of perjury on this
17th day of October 2003, at Shirley, MA 01464.

_____

Rosario F. Guzzi, pro se
W-63283 MCI Shirley Medium
Box 1218
Shirley, MA 01464

# Exhibit D

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                        SUPERIOR COURT DEPARTMENT

                                      NOS. 96-1187; 97-1058

COMMONWEALTH          )
                      )
                      )
v.                    )
                      )
ROSARIO F. GUZZI      )
                      )

## MOTION FOR TELEPHONIC EVIDENCE

Now comes the defendant in the above entitled cases and
moves this court that he be informed whether or not he, or
the Commonwealth's witness, Ann C. Uttaro, have been
electonically recorded by the state.

In the likely event that neither have been electronically
recorded, the defendant moves that this court ORDER such
evidence that he telephoned the witness, or that she received
telephone calls from the defendant, on the dates it is stated
he did so in violation of an abuse prevention order, pursuant
to G.L. c. 209A, section 7.

It is reasonable to infer that the telephone carrier does
maintain such records, if only for their usage determining
frequency of telephone calls for future equipment placement.
Such technology is now available to clearly reflect that a
call from one number to another did transpire on any certain
date and time. The dates in question relative to violations
of the law are stated on the indictments. While defendant
did not have telephone service at the time of said violations,

the witness was a subscriber: (617) 244-5349.

It is not the defendant's intent to secure any proof, but to offer negative evidence, which is relevant and material, which will rebut contradicting testimony.

The burden has been shifted to the defendant to come forward with evidence of his defense, which is nonetheless proper. See **Comm. v. Jones**, 372 Mass. 403, 406, 361 N.E.2d 1308 (1977).

The limits of fairness and justice dictate that the defendant be provided with an opportunity to demonstrate the validity of his defense by ALLOWING him this request for telephonic evidence.

Respectfully submitted,

Rosario F. Guzzi, pro se
W-63283
MCI Shirley Medium
Box 1218
Shirley, MA 01464

November 25, 2003

## CERTIFICATE OF SERVICE

I certify that I have served a true copy of my motion for telephonic evidence to the district attorney's office at 40 Thorndike Street in Cambridge, MA 02141, via first class mail, postage paid.

Rosario F. Guzzi, pro se

## CERTIFICATE OF SERVICE

I certify that I have served a true copy of my
opposition, with exhibits, to respondent's counsel,
Eva M. Badway, Esq., AAG, One Ashburton Place, Boston,
MA 02108, via first class/priority mail, postage paid,
by depositing same in the institution's mail dropn.

Rosario Guzzi, pro se

MCI Shirley Medium

Box 1218

Shirley, MA 01464

June 29, 2005